STATE OF MINNESOTA *vs.* DAVID L. ROBINSON and another.

November 29, 1889.

**Municipal Corporation—Licensing Draymen—Persons letting Teams and Drays only.**—The provision in the charter of the city of Minneapolis, authorizing the city council "to license and regulate hackmen, draymen, expressmen, and all other persons engaged in carrying passengers, baggage, or freight, and to regulate their charges thereon," applies only to those who are engaged in business as carriers of persons or property for hire, and not to those who, not being engaged in such business, merely hire out teams and vehicles to those who have property to transport, the hirer himself using and controlling the team and vehicle.

Defendants were prosecuted and convicted in the municipal court of Minneapolis on a complaint for violating the city ordinance recited in the opinion, and they appeal from the judgment.

*Steele & Rees,* for appellants.

*Moses E. Clapp,* Attorney General, *R. D. Russell,* and *Albert H. Hall,* for the State.

MITCHELL, J. The ordinance under which the defendants were convicted was assumed to be enacted under the provision of the charter of the city of Minneapolis authorizing the city council "to license and regulate hackmen, draymen, expressmen, and all other persons *engaged in carrying passengers, baggage, or freight, and to regulate their charges thereon.*" The ordinance provides that "no person or persons shall hire out, keep, or use for hire, upon the streets of the city of Minneapolis, any vehicle of any description or name whatever, either for the conveyance of passengers, or for the conveying or transportation of goods, wares, or merchandise, or other articles, from place to place within said city, without a license so to do." It is unnecessary to consider whether the evidence brings the case with-

in the provisions of this ordinance; for, if it does, we are satisfied that the ordinance would not be authorized by the charter. The provision of the charter referred to is a grant of police power designed to operate alone upon those who are engaged in business in the city as carriers of persons or property for hire, and to so regulate them as to prevent extortion, imposition, or wrong to strangers or others who employ them for that purpose. This is a rightful exercise of the police power, and one which has never been questioned. As both parties seem to have tried the case upon a somewhat erroneous theory of the law, the evidence as to the nature of defendants' business and their manner of conducting it is not, perhaps, as full or explicit as it might have been. But, as we understand it, the defendants were not at all engaged in business as carriers of persons or property; but they owned a number of wagons and teams, which they hired out by the day to those who had goods or freight to transport, the hirer himself using and controlling the team, and the defendants charging him in proportion to the time he used it. In short, that the business of defendants was conducted precisely as that of a livery-man, the only difference being that in the latter the team and vehicle are usually hired for the purpose of being used in the transportation of persons, while in the former they were let to be used in carrying property. Thus viewed, the case comes within neither the letter nor spirit of such police regulations as are contemplated by the charter.

Judgment reversed.