Mildred L. SMITH, Appellant,

v.

INDEMNITY INSURANCE COMPANY OF NORTH AMERICA, Appellee.

No. 16814.

United States Court of Appeals District of Columbia Circuit.

Reargued March 19, 1963.

Decided April 25, 1963.

Petition for Rehearing En Banc Denied En Banc May 10, 1963.

Mr. Leonard Braman, Washington, D. C., with whom Messrs. David G. Bress and J. H. Krug, Washington, D. C., were on the brief, for appellant.

Mr. Richard W. Galiher, Washington, D. C., with whom Messrs. William E. Stewart, Jr., and Harvey B. Bolton, Jr., Washington, D. C., were on the brief, for appellee.

Before BAZELON, Chief Judge, and FAHY and BASTIAN, Circuit Judges.

FAHY, Circuit Judge.

 Appellant is the widow of Herbert C. Smith. She sued appellee, an insurance company, on a policy of accident insurance by which appellee insured the life of several executives of the National League of Insured Savings Associations, the insured's employer. Appellant's deceased husband was an executive of the League. The policy in Part V included the following description of its coverage:

"The hazards against which insurance is granted under the Policy are (provided such hazards arise out of and in the course of the business of the Employer)

\* \* \* \* \* \*

"(c) any land conveyance licensed for the transportation of passengers for hire while traveling directly to or from an airport immediately preceding departure or immediately following arrival of an aircraft used by or to be used by the Insured solely as a passenger."

The policy was issued in Texas. During the life of the policy decedent left Washington by air on a business trip to Phoenix, Dallas, New Orleans and Biloxi. The business was that of his employer. He landed at New Orleans airport February 10, 1959, on this trip. He there hired a Hertz Rent-A-Car to go to Biloxi, Mississippi, to attend a Savings and Loan conference. Returning from the conference in the car to the airport the next day, with air passage booked for his return trip to the employer's headquarters in Washington, he was killed in a collision in the vicinity of New Orleans. The car he was driving had a license from the Department of Revenue, State of Louisiana, "to cover a personal use passenger car," according to a letter in the record supplied by an official of the State. The car, however, was hired to decedent, and, as we have indicated, he was its driver at the time of the collision which resulted in his death. On these facts the appellee insurance company moved for summary judgment on the ground that the claim was not within the coverage of the policy. The motion was granted and the complaint dismissed. This appeal followed.

The question is whether as matter of law the circumstances in which the accident occurred do not come within the hazards described in Part V(c), quoted above.

 It is reasonably clear that the concluding language in Part V(c), "used by or to be used by the Insured solely as a passenger" refers not to the land conveyance but to the aircraft and so has no adverse effect upon plaintiff's position. It is also clear that decedent was traveling directly to an airport immediately preceding departure, and that the Hertz car was a land conveyance. Since, in addition, the hazard arose out of and was in the course of business of the employer, the question is narrowed to whether the car was "licensed for the transportation of passengers for hire." As to this, it was licensed to be used as it was being used, that is, to be hired to decedent as a passenger car to transport him. The fact that decedent was not permitted to transport other passengers for hire did not necessarily remove the case from the coverage of the policy. Nor can we agree with the District Court that the policy contemplated the use by the insured of only commercial common carriers. At least the policy does not unambiguously limit the insured's choice of conveyance to buses, taxicabs or limousines with a driver.

We are referred to several decisions of the courts of Texas, where, as we have said, the policy was issued. Only one of these cases involved the construction of an insurance policy. It is Continental Casualty Co. v. Warren, 152 Tex. 164, 254 S.W.2d 762 (1953). It was held that the pilot of an airplane, who was an employee of the owner, came within the protection of a policy which

covered injury sustained in consequence of "riding as a passenger in" the plane. The court rejected the contention that the pilot was not a "passenger," saying:

"But for the fact that insurance policies are governed by the special rule of construction, which is a familiar part of our jurisprudence, we might, indeed, hold either that the interpretation against liability of the insurer should prevail or that, the policy being ambiguous, there is a fact issue as to what was intended. Yet the rule, of course, applies, and under it the insurer may not escape liability merely because his or its interpretation should appear to us a more likely reflection of the intent of the parties than the interpretation urged by the insured. The latter has to be no more than one which is not itself unreasonable. Lloyds Casualty Insurer v. McCrary, 149 Tex. 172, 179, 229 S.W.2d 605, 609." 254 S.W.2d at 763.

The above case supports the view that decedent was a passenger within the term "passengers" used in Part V(c) of this policy. However, this is not the critical matter. The question is, as we have said, the purpose for which the vehicle was licensed.

While no other Texas cases cited to us involved the interpretation of an insurance policy, we are referred to City of Corpus Christi v. Texas Driverless Co., 144 Tex. 288, 190 S.W.2d 484 (1945). A state statute granted power to a city such as Corpus Christi to require owners of motor vehicles operated for hire on the city streets to post bond or the like for the payment of certain losses due to negligence of the owners of the vehicles or their agents. The court held that this included authority so to require of those engaged in the business of renting driverless automobiles. And in City of San Antonio v. Besteiro, 209 S.W. 472 (Tex. Civ.App., 1919), also cited, the city, under authority of legislation, was held validly

to have included the hiring of driverless automobiles within its power to regulate the business of offering automobiles for hire.

These cases, however, seem of little assistance to appellant, because in any event it can hardly be doubted that Hertz rented or hired the car to decedent. The doubtful question is whether Hertz did so "for the transportation of passengers for hire." [1] To the effect that it did not appellee cites City of Corpus Christi v. McClaugherty, 284 S.W.2d 927 (Tex.Civ.App., 1955), involving the authority of the city to levy a permit fee of two per cent of gross receipts against Hertz Drive-Ur-Self System for the privilege of conducting its driverless automobile rental business within the city. The language of the authorizing statute, the court pointed out, "refers to the operation of motor vehicles transporting passengers for hire." 284 S.W. 2d at 928. It was held this did not embrace the driverless automobile business, "which does not transport passengers for hire, but simply rents automobiles to be used by the person renting the same for any purposes which he might see fit." In so holding the court cited in support Armstrong v. Denver Saunders System, 84 Colo. 138, 268 P. 976 (1928); People v. Hertz DriveUrSelf Stations, Inc., 338 Mich. 139, 61 N.W.2d 113 (1955); State v. Dabney, 176 Ark. 1071, 5 S.W.2d 304 (1928), and Harrington v. Cobb, 185 S.W.2d 133 (Tex.Civ.App., 1945), affirmed, 144 Tex. 360, 190 S.W.2d 709, 172 A.L.R. 837 (1945). The court then added:

"The City of Corpus Christi must find, if at all, its authority to levy a city permit tax of two per cent of gross receipts against appellee in the 1947 amendment to Art. 6698, supra. This amendment is an exception to the rule laid down originally by the provisions of Art. 6698, supra, pre-empting to the State the exclusive right to levy and collect regis-

---

[1] If so the renting or hiring came within the term "licensed," for the policy must be construed to cover the use to which the car was being put with Hertz's permission, whether or not within the wording of the state license to Hertz.

tration fees and all other like burdens on owners of motor vehicles. Such amendment which provides an exception to the provision of the main article must be strictly construed."

In the Armstrong case the court also expressed a similar thought, saying that in adopting a construction which rejected including a driverless vehicle within the reach of a taxing statute "the doubt is always resolved against the tax." 268 P. at 978.

■ These decisions on the whole add some persuasiveness to appellee's position, but they are not controlling. They do not construe insurance policies. In suits on such policies a canon of construction applies which is just the opposite of that applicable to a taxing statute. In insurance cases the policy is construed broadly, favorably to the insured, while a taxing statute is construed narrowly, favorably to the person sought to be taxed. If there is ambiguity in an insurance policy the rule in Texas, we find, is like the rule in this jurisdiction, namely, "doubt should be resolved in favor of the insured." Buchanan v. Massachusetts Protective Ass'n, 96 U.S.App.D.C. 144, 146, 223 F.2d 609, 611, 53 A.L.R.2d 548 (1955), citing Stroehmann v. Mutual Life Ins. Co., 300 U.S. 435, 57 S.Ct. 607, 81 L.Ed. 732 (1937), where, quoting from an earlier decision, the Supreme Court said:

"The rule is settled that in case of ambiguity that construction of the policy will be adopted which is most favorable to the insured. The language employed is that of the company and it is consistent with both reason and justice that any fair doubt as to the meaning of its own words should be resolved against it." 300 U.S. at 439, 57 S.Ct. at 609, 81 L.Ed. 732. And see Phoenix Mutual Life Ins. Co. of Hartford, Conn. v. Flynn, 83 U.S.App.D.C. 381, 171 F.2d 982 (1948); Continental Casualty Co. v. Warren, supra.

There can be no serious question that the general purpose of the policy was to cover decedent on a business trip such as the one which resulted in his death. Moreover, at the time of the accident he was not being driven by a friend or using a car of his own. He was traveling in a type of vehicle readily available for hire to the traveling public on such a trip as he was making. He hired it for the transportation of himself, and under the Warren decision he should be considered a passenger. He was also, as we have said, traveling directly to the airport for departure by air to his employer's place of business at the end of the trip for the employer. All these circumstances tend to bring the events which occurred within those intended to be insured against. Though we cannot say the policy clearly covers the case or that the construction adopted by the District Court is not a reasonable one, we cannot escape the conviction that the circumstances which transpired, considered with the language of the policy, give rise to a considerable doubt that the courts should read the policy to exclude this accident from its coverage. When that doubt is resolved favorably to the insured, as it must be, such exclusion cannot be upheld. Accordingly, we think the court erred in granting summary judgment for appellee.

Reversed and remanded for further proceedings not inconsistent with this opinion.

BASTIAN, Circuit Judge (dissenting).

Plaintiff [appellant] filed suit in the District Court against defendant [appellee], Indemnity Insurance Company of North America, under a policy of insurance issued to the employer of plaintiff's husband. The policy involved was executed and delivered to the National League of Insured Savings Associations [hereinafter called "the employer"], with headquarters in Washington, D. C. The policy, termed "A. B. Blanket Accident Policy," was effective from July 12, 1958, to July 12, 1959. It insured the life of certain executives of the employer, including plaintiff's husband. The defendant agreed, among other things, to pay

$100,000 in the event of the death of any such employee occurring within the terms of the policy. The hazards insured against were the following:

"Part V. *Description of Hazards*

"The hazards against which insurance is granted under this Policy are (provided such hazards arise out of and in the course of the business of the Employer)

"(a) any civil aircraft, provided such aircraft (1) is operated by a properly certificated pilot, (2) has a current unrestricted airworthiness certificate, and (3) is not being used for fire fighting, pipe line inspection, aerial photography or exploration;

"(b) any aircraft operated by the Military Air Transport Service (MATS) of the United States of America, or any similar airline operated on a scheduled basis by the military authorities of any other nation;

"(c) any land conveyance licensed for the transportation of passengers for hire while traveling directly to or from an airport immediately preceding departure or immediately following arrival of an aircraft used by or to be used by the Insured solely as a passenger."

On February 7, 1959, plaintiff's husband landed at the New Orleans airport on business of the employer. On the same day, and still on the employer's business, he hired a "drive-it-yourself" automobile from The Hertz Corporation and traveled to Biloxi, Mississippi, a distance of about one hundred miles, to attend a four-day business meeting. On February 11, 1959, he started back to the New Orleans airport from Biloxi in the same rented car and, some forty miles from the airport, was involved in an automobile accident resulting in his death.

Defendant having denied liability under the terms of the policy, the present action was instituted. Among other defenses, defendant claimed that the hazards described in the policy did not cover the circumstances of the decedent's death. Cross motions for summary judgment were filed, and, on hearing of the cross motions, the District Court entered its order denying plaintiff's motion and granting defendant's motion for summary judgment. This appeal followed.

I think it clear that the judgment appealed from should be affirmed. I recognize, of course, the elementary proposition that any ambiguities in an insurance policy must be construed in favor of the insured. However, here it appears that there are no ambiguities. Subparagraphs (a) and (b) of the description of hazards, above set forth, are clearly not applicable to the instant case as death did not occur on any civil aircraft, nor was there involved any aircraft operated by the Military Air Transport Service of the United States or any similar airline operated by the military authorities of any other nation. Therefore, any claim that plaintiff has must have reference to subparagraph (c) of Part V of the policy.

The decedent was not riding in "any land conveyance licensed for the transportation of passengers for hire." This clause obviously refers to duly licensed taxicabs, airport limousines, airport busses, and similar types of vehicles. This rented automobile was clearly not one of these types for, by the terms of the contract between the decedent and The Hertz Corporation, the rented car was not permitted to be used for transportation of persons for hire.[1]

I am in entire accord with the opinion of the District Judge issued at the time of the granting of the motion for summary judgment in favor of the defendant

---

1. The contract under which the car was rented provided: "Renter agrees not to use, operate or drive said vehicle for the transportation of persons or property for hire, express or implied. * * *"

insurance company. I quote from that opinion as follows:

"It is true, as counsel for the plaintiff contends, and in fact it is an elementary principle of the law of insurance, that ambiguities in an insurance policy, drawn as they are by the insurance companies, should be construed in favor of the insured. However, this principle does not mean that a tortured interpretation must be attached to a provision of the policy that is not ambiguous on its face merely in order to favor the insured.

"There is no ambiguity in the phrase 'any land conveyance licensed for the transportation of passengers for hire.' Obviously this policy contemplates that its coverage should not be limited to the time that the insured employee spends in the airplane but that it also includes the trip from the airport to his final destination, as it is well known that most airports are a considerable distance from the cities with which they are connected.

"A conveyance licensed for the transportation of passengers for hire necessarily implies, as a common sense matter, a conveyance driven by somebody in which the insured is a passenger, such as a bus plying between the airport and the air terminal in the city or a limousine or a taxicab or some such conveyance as that.

"It is quite apparent that there was no intention to insure the passenger while he was driving himself. To say that an automobile that a person rents from the owner for the purpose of driving himself is a conveyance licensed for the transportation of passengers for hire would be attaching a meaning to the phrase that is absolutely insupportable. It is contrary to common sense and contrary to the dictates of plain English.

"The Court is of the opinion that the words 'land conveyance licensed for the transportation of passengers for hire' may include any common carrier or any contract carrier or any other vehicle in which the insured makes a trip as a passenger from the airport to his final destination.

"A person who is driving his own car is not a passenger. This distinction is not purely technical, it is based both on common sense and what was obviously the intention of the insurance company, and that intention was clearly expressed." (J. A. 45, 46.)

I further feel that the vehicle in which the plaintiff was riding at the time of the accident was not "traveling directly to or from an airport *immediately preceding* departure * * * of an aircraft used by or to be used by the Insured solely as a passenger." [Emphasis supplied.] It is hard to see how it could be said that such was the case in the present instance, and it would be difficult to see what limits such a construction would reach. For instance, could a person who rents a car to drive from Washington to New York, where he intends to board a plane, be said to be "traveling directly" to the New York airport "immediately preceding departure" of the plane proposed to be taken?

For the reasons above stated, it seems to me that the accident did not come within the description of hazards against which insurance was provided, and the District Court was correct in granting summary judgment in favor of the defendant insurance company. So, I dissent.